IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, Plaintiff, | ) ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 13-00066-KD-M |
| ST. CATHERINE OF SIENA PARISH and KIKER CORPORATION, Defendants. | ) ) ) ) | |

## ORDER

This matter is before the Court on Pennsylvania National Mutual Casualty Insurance Company (Pennsylvania National)'s Motion for Summary Judgment (Docs. 72, 74-1 to 74-10, 75-77, 89-90), Kiker Corporation ("Kiker")'s Response (Doc. 105), St. Catherine of Siena Parish ("St Catherine)'s Response (Doc. 102, 103), and Pennsylvania National's Replies (Docs. 107-108); and St. Catherine's Motion for Summary Judgment (Docs. 70-71, 73, 80), Pennsylvania National's Response (Doc. 104), and St. Catherine's Reply (Doc. 106).[1]

### I.  Facts[2]

This case has its origins in *St. Catherine of Sienna Parish v. Kiker Corp., Thompson Eng'g, Inc., Thompson Eng'g Testing, Inc., and Damon Lett Roofing*, filed in the Circuit Court of

---

[1] Pennsylvania National asserts that St. Catherine filed a renewed motion to strike its exhibits 6, 7, and 10. (Doc. 107 at 2). St. Catherine has not actually filed any such motion, but references "renewal" of its motion to strike within the body of its Response to summary judgment, claiming as well the Court's rulings have violated its due process rights. (Doc. 103 at 2). Additionally, St. Catherine endeavors to move to strike, again within the body of its summary judgment briefing, all correspondence offered by Pennsylvania National as exhibits (Doc. 103 at 2). Regardless, the matter is now **MOOT** due to Kiker's concession of its counterclaims (which are apparently the subject of the exhibits included in St. Catherine's renewal and new request to strike) and moreover, the Court did not rely on any of the exhibits in its ruling.

[2] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v.. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

Mobile County, Alabama (CV 2010-900578). (Doc. 71-1 at 1-10, 40-44 (and as amended)). The state court case concerned a dispute stemming from a roofing construction contract between Pennsylvania National's insured, Kiker, and St. Catherine, for Kiker to re-roof two of St. Catherine's buildings (the main building and the "horseshoe" building). Kiker executed a May 14, 2003 written contract for the roofing work on the main building (Doc. 71-1 at 47), but did not for the horseshoe building. Kiker then sub-contracted the roofing work out to Damon Lett Roofing on May 22, 2003. (Doc. 71-1 at 35-37). The roofs were replaced with a "40 year roof" shingle, and the work was completed in March 2004 (main building) and February 2005 (horseshoe building). However, the roofs began leaking in April 2008 (main building) and February 2005 (horseshoe building). Despite 40-50 service visits, Kiker could neither diagnose nor fix the problem and the leaks continued. St. Catherine hired a roof inspector and an under-the-shingle inspection allegedly revealed installation errors, construction defects, and breaches of the scope of work established by Kiker's agreement with St. Catherine. (Doc. 71-2 at 333, 338, 343-350, 377, 395, 404, 477).

As such, on March 10, 2010, St. Catherine sued Thompson Engineering, Thompson Engineering Testing, and Kiker in state court for negligence, wantonness, breach of contract, and misrepresentation/suppression. (Doc. 71-1 at 1-10, 40-44). Kiker filed a Third-Party Complaint against Damon Lett Roofing (its sub-contractor) for breach of contract, negligence, breach of implied/express warranties, breach of implied warranty of workmanship, common law indemnity, and breach of contract for failure to procure insurance. (Doc. 71-1 at 18-30).

At the time of the roofing project, Kiker had a commercial general liability ("CGL") policy with Pennsylvania National. (Doc. 76). As such, Pennsylvania National defended

Kiker, against St. Catherine's claims, in the state court litigation under a reservation of rights. In doing so, however, Pennsylvania National advised Kiker that there was no coverage under the terms of the insurance policy for "[a]ny damage as a result of breach of warranty or breach of contract [as it] is not covered as it is not considered an occurrence." (Doc. 74-3 at 5).

Only St. Catherine's claims against Kiker proceeded to trial. During trial, the Court granted a motion for judgment as a matter of law as to St. Catherine's claims against Kiker for negligence, wantonness, and misrepresentation/suppression, stating that the only remaining claim for the jury was St. Catherine's breach of contract claim. (Doc. 75-1 at 56).

At trial, St. Catherine presented evidence that Kiker provided faulty and/or defective workmanship on the roofs for the main and horseshoe buildings. St. Catherine also presented evidence that this faulty workmanship resulted in the building's gypsum decking being water damaged and the main building's interior ceiling being damaged. (Doc. 71-2). Trial testimony indicated that the main building's interior ceiling repairs (in 10 areas) would cost $104,127.63 to repair. (Doc. 71-2 at 56).

The state court judge charged the jury, in relevant part, as follows:

\*\*\*

….**This is an action for breach of contract**. A contract is breached or broken when a party does not do what he promised to do in the contract. To recover damages from Kiker Corporation for breach of contract Saint Catherine of Siena Parish must prove to your reasonable satisfaction all of the following: One, that Saint Catherine of Siena and Kiker Corporation entered into a contract; two, that Saint Catherine did all the things that the contract required it to do; three, that the Kiker Corporation failed to do the things that the contract required it to do; and four, that Saint Catherine of Siena Parish was harmed by that failure. Those are the elements of breach of contract.

Damages, the general rule for breach of contract, if you decide that Saint Catherine of Siena Parish has proved their claim of breach of contract, you must also decide how much money will reasonably compensate that party for the harm caused by the breach. This compensation is called damages. The purpose of such damages is to put the party

claiming the breach in as good a position as they would have had if the opposing party had not broken the contract…. If you find that the Defendant breached its written contract you must also determine whether the remedy contained in the warranty failed its essential purpose. By Defendant's warranty it promised [sic] do that during a period of two years from the date of substantial completion of the roof it would at its own cost make or cause to be made such repairs to said roof and compositional flashing in faults or defects in workmanship applied by or through the contractor as may be necessary. A remedy such as one found in this warranty fails of its essential purpose if the Defendant refused to repair or replace the malfunctioning equipment or if it failed to do so in a reasonable period of time under the circumstances….

***

It is a general rule in contracts for works and services that there is an implied duty to perform that contract or services with such degree of skill or workmanship which is possessed by those of ordinary skill in the particular trade for which one is employed….

(Doc. 75-2 at 3-5 (emphasis added)). (See also Doc. 75-1 at 56-58).[3]

Following deliberations, the jury found in favor of St. Catherine and returned a general verdict -- "find[ing] the issues in favor of the plaintiff and against the Kiker Corporation and assess the plaintiff's damages as follows: $350,000." (Doc. 71-1 at 45). The state court judge entered a "Jury and Verdict" Order stating St. Catherine had been awarded $350,000 in compensatory damages. (Id. at 46). Kiker and St. Catherine appealed the verdict, which remains pending before the Alabama Supreme Court.

As a result of the $350,000 verdict against Kiker, Pennsylvania National initiated this federal declaratory judgment action[4] asking this Court to determine whether it has a duty to indemnify Kiker (*i.e.*, pay St. Catherine's jury award against Kiker). Pennsylvania National seeks a declaration that it is not required to indemnify Kiker because St. Catherine's breach of

---

3 An express limited labor warranty was issued by Kiker to St. Catherine as part of the St. Catherine-Kiker roofing contract. (Doc. 71-4, p. 4) This express warranty stated that it was in lieu of all other warranties, expressed or implied. Id. The state court judge charged the jury on the remedy promised in Kiker's express limited labor warranty and stated, regarding determining extent of damages, that the jury should consider whether the remedy failed in its essential purpose. Although not specifically stated, it is presumed that one purpose of the express warranty charge was to convey to the jury that if the express warranty failed in its essential purpose then the express warranty's limitation on damages could be disregarded.

4 The Complaint alleges federal diversity jurisdiction. (Doc. 17 at 2).

4

contract claim against Kiker does not constitute an "occurrence" under the policy. In the alternative, Pennsylvania National argues that the policy exclusions (contractual liability exclusion and "your work" exclusion) prevent recovery.

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a) (Dec. 2010).    Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

5

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment. See, e.g., Am. Bankers Ins. Group v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005); Gerling Global Reins. Corp. of Am. v. Gallagher, 267 F.3d 1228, 1233 (11th Cir. 2001). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted). The Court is mindful that "[w]hen both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." Muzzy Prods., Corp. v. Sullivan Indus., Inc., 194 F.Supp.2d 1360, 1378 (N.D. Ga. 2002)). The Court has reviewed the facts submitted by each party and has made its own examination of the record.

## III. Kiker v. Pennsylvania National: Kiker's Counterclaims

Kiker has specifically withdrawn all of its counterclaims against Pennsylvania National "or otherwise concede[d]" them. (Doc. 105 at 2). As such, Pennsylvania National's motion for summary judgment against Kiker, as to those counterclaims, is **MOOT.**

## IV. Analysis[5]

### A. Occurrence

Pennsylvania National contends that it is not obligated to indemnify Kiker for the $350,000 verdict for breach of contract because there was no "occurrence" to trigger coverage under the CGL policy. St. Catherine contends that faulty workmanship resulted in a covered occurrence that caused, through repeated exposure to rain, damage to the gypsum substrate of the roof, as well as the interior and ceiling of the building.

The relevant CGL policy's insuring agreement states that insurer Pennsylvania National must pay the sums that the insured Kiker becomes legally obligated to pay as damages because of "bodily injury" or "property damage" *caused by an "occurrence:"*

> **1. Insuring Agreement**
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.…
> \*\*\*
> b. This insurance applies to …"property damage" only if:
> (1) The … "property damage" is caused by an "occurrence" that takes place in the "coverage territory" …

---

5 The parties' briefing cites the May 1, 2009-May 1, 2010 CGL policy -- even though the roofs were completed in 2004 and 2005 and began leaking in 2005 and 2008. As the parties appear to agree that the 2009-2010 policy is the relevant and applicable policy (and no party has objected to this), the Court will presume that such is correct for purposes of this summary judgment review.

Additionally, St. Catherine repeatedly references the Plaintiff by an incorrect name, as "Continental," in its summary judgment briefing; the Court presumes this is a typographical error.

7

(Doc. 76 at 92).

The CGL policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 76 at 105). Under Alabama law, the term "accident" means "an unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated." Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank, 928 So.2d 1006, 1011 (Ala. 2005) (citing St. Paul Fire & Marine Ins. Co. v. Christiansen Marine, Inc., 893 So.2d 1124, 1136 (Ala. 2004)).

Pennsylvania National argues that Kiker's breach of contract claim cannot give rise to an occurrence under the policy. Penn also argues that all the cases cited by St. Catherine to the contrary are distinguishable because the verdicts in each of those cases included tort claims as well as breach of contract claims. The court disagrees with both arguments.

In Moss v. Champion Insurance Company, 442 So.2d 26, 29 (Ala. 1983), the Alabama Supreme Court found an "occurrence" for CGL policy purposes when the contractor's faulty workmanship resulted in not only a poorly constructed roof -- the only job the contractor had been hired to perform -- but damage to other parts of the plaintiff's home. One year later the Court held that faulty workmanship itself is not an occurrence for purposes of a CGL policy. U.S. Fid. & Guar. Co. v. Warwick, 446 So.2d 1021 (Ala. 1984). Given the seemingly conflicting decisions in Warwick and Moss, the Alabama Supreme Court then explained in Town & Country Prop., L.L.C. v. Amerisure Ins. Co., 111 So.3d 699, 707 (Ala. 2011) (emphasis added) that: "[w]e may conclude that faulty workmanship itself is not an occurrence but that *faulty workmanship may lead to an occurrence if it subjects … other parts of the structure to*

8

*'continuous or repeated exposure'* to some other *'general harmful condition'* (e.g., the rain in *Moss*) *and, as a result of that exposure ... other parts of the structure are damaged.*" The holding in Town and Country was succinctly summarized by Judge Steele as follows:

> the rule in Alabama is that there is an "occurrence" when faulty work results in damage to nondefective parts of a structure or property, but that there is no "occurrence" insofar as the insured is held liable for repairing or replacing the faulty work itself.

Cincinnati Ins. Co. v. Amerisure Ins. Co., 2012 WL 4033724, 6 (S.D. Ala. Sept. 12, 2012).

The Alabama Supreme Court very recently clarified "the dichotomy" between the court's holdings in Warwick and Moss, in Owners Ins. Co. v. Jim Carr Homebuilder, LLC, 2014 WL 1270629, *5-6 (Ala. Mar. 28, 2014), stating as follows:[6]

> [The insurance company argues] that faulty workmanship performed as part of a construction or repair project might result in an "occurrence" only to the extent that that workmanship results in property damage to real or personal property that is not part of that construction or repair project. However, in making that argument Owners asks the term "occurrence" to do too much. The term "occurrence" is defined in the Owners policy simply as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." If some portion of the Owners policy seeks to affect coverage by references to the nature or location of the property damaged, it is not the provision in the policy for coverage of occurrences. The policy simply does not define "occurrence" by reference to such criteria. *See, e.g., Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 9 (Tex.2007) ("The CGL policy, however, does not define an 'occurrence' in terms of the ownership or character of the property damaged by the act or event. Rather, the policy asks whether the injury was intended or fortuitous, that is, whether the injury was an accident.... [N]o logical basis within the 'occurrence' definition allows for distinguishing between damage to the insured's work and damage to some third-party's [work or] property ...."). *See also Travelers Indem. Co. of America v. Moore & Assocs., Inc.,* 216 S.W.3d 302, 308–09 (Tenn.2007); *United States Fire Ins. Co. v. J.S.U.B., Inc.,* 979 So.2d 871, 883 (Fla.2007) ("[W]e fail to see how defective work that results in a claim against the contractor because of injury to a third party or damage to a third party's property is 'unforeseeable,' while the same defective work that results in a claim against the contractor because of damage to the completed project is 'foreseeable.' This distinction would make the definition of 'occurrence' dependent on which property was damaged.); 9A *Couch on Insurance* § 129:4 (3d ed. 2005) ("[W]hat does constitute an occurrence is an accident caused by or resulting from faulty

---

6 The prior decision, Owners Ins. Co. v. Jim Carr Homebuilder, LLC, 2013 WL 5298575 (Ala. Sept. 20, 2013), was withdrawn and superseded on grant of rehearing on March 28, 2014.

workmanship, including damage to any property other than the work product and damage to the work product other than the defective workmanship."). Indeed, to read into the term "occurrence" the limitations urged by Owners would mean that, in a case like this one, where the insured contractor is engaged in constructing an entirely new building, or in a case where the insured contractor is completely renovating a building, coverage for accidents resulting from some generally harmful condition would be illusory. There would be no portion of the project that, if damaged as a result of exposure to such a condition arising out of faulty workmanship of the insured, would be covered under the policy.

***

….we think it prudent to restate that principle in more precise terms—faulty workmanship itself is not "property damage" "caused by" or "arising out of" an "occurrence." *See also Shane Traylor Cabinetmaker, LLC v. American Express Res. Ins. Co.,* 126 So.3d 163, 172 (Ala.2013) (Murdock, J., concurring specially) ("I would state the rule as follows: 'faulty workmanship itself' is not 'property damage' 'caused by' or 'arising out of' an 'occurrence.' That is, the fact that the cost of repairing or replacing faulty workmanship itself is not the intended object of the insurance policy does not necessarily mean that, in an appropriate case, additional damage to a contractor's work resulting from faulty workmanship might not properly be considered 'property damage' 'caused by' or 'arising out of' an 'occurrence.'"). In sum, the cost of repairing or replacing faulty workmanship is not the intended object of a CGL policy issued to a builder or contractor. Accordingly, we conclude that the definition of the term "occurrence" does not itself exclude from coverage the property damage alleged in this case.

Contrary to Pennsylvania's argument, the fact that <u>Moss</u>, <u>Warwick</u>, <u>Town & Country</u>, and <u>Jim Carr</u>, may have all included tort and contract claims, as opposed to only a contract claim, does not distinguish their holdings. The explanation as to when faulty workmanship may give rise to an occurrence did not rest on whether the verdict was for tort or contract. Rather the focus was on the claim of faulty workmanship.

St. Catherine's breach of contract claim against Kiker, as submitted to the jury, included the breach of the implied warranty to perform the contract with ordinary skill or workmanship.[7]

---

7 In Pennsylvania's reply it cites the jury instruction regarding the express warranty and then argues that the jury charge regarding the implied warranty was given only as "a possible measure of damages and not independent of the breach of contract claim…." (Doc. 107 at 8). Contrary to this confusing assertion, the transcript indicates that the judge charged the jury on the implied warranty as part of the breach of contract claim. (Doc. 75-2 at 5).

See e.g., Blackmon v. Powell, 132 So.3d 1, 5 (Ala. 2013) (discussing the general rule in contracts for work or services that there is an implied a duty to perform with that degree of skill or workmanship which is possessed by those of ordinary skill in the particular trade for which one is employed). A claim for breach of an implied warranty (*i.e.*, that the contract will be performed with ordinary skill or workmanship), is a claim of faulty workmanship. Thus, the cases that discuss faulty workmanship claims are applicable to implied workmanship warranty claims, as well as claims sounding in tort.

St. Catherine's breach of contract claim, which encompasses its faulty workmanship claim, includes damages not just for repair and replacement of the roofs, but also other property damage to the buildings – namely, to the gypsum substrate of the roof, as well as the interior and ceiling of the building. Because faulty workmanship subjected the structure to continuous or repeated exposure to water, resulting in damage to not only the roof but also other property, the court finds that the claim is for an "occurrence" as defined in the policy.[8]

**B. Exclusions**

Pennsylvania National contends that if it is determined that St. Catherine's claim is an "occurrence", the policy excludes any recovery under two exclusions; the "your work" exclusion and the "contractual liability" exclusion.

In Alabama, "[g]eneral rules of contract law govern an insurance contract." Safeway Ins. Co. of Ala., Inc. v. Herrera, 912 So.2d 1140, 1143 (Ala. 2005). "In the absence of statutory

---

[8] St. Catherine contends that the Court in Jim Carr broadened coverage for defective construction claims and that "*Jim Carr* means that both categories of damages (the contracted work and the damage to unrelated parts of the building) constitute[] a covered 'occurrence.'" (Doc. 106 at 2-3). The undersigned is unsure what St. Catherine contends, but in light of the Court's statement in Jim Carr that the cost of repairing or replacing faulty workmanship is not recoverable damage, the Court cannot agree that the "contracted work" is now recoverable property damage.

11

provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts or to take anything from them." Upton v. Miss. Valley Title Ins. Co., 469 So.2d 548, 554 (Ala. 1985) (quoting Life & Cas. Ins. Co. v. Whitehurst, 148 So. 164 (1933) (internal quotations omitted)). However, Alabama courts have held that an insurance policy "shall be construed liberally in favor of the insured and strictly against the insurer. Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company, which drafted and issued the policy." Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379-380 (Ala. 1996) (internal citations omitted). "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." Safeway Ins. Co., 912 So.2d at 1143. Nevertheless, "[i]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous." Woodall v. Alfa Mut. Ins. Co., 658 So.2d 369 (Ala. 1995) (quoting Gregory v. Western World Ins. Co., 481 So.2d 878, 881 (Ala. 1985) (internal citations and quotations omitted)).

"Whether a provision of an insurance policy is ambiguous is a question of law[,]" Safeway Ins. Co., 912 So.2d at 1143, and "[t]he test to be applied by [a] court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean…In

determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be ambiguous….This means that the terms of an insurance policy should be given a rational and practical construction." Porterfield v. Audubon Indem. Co., 856 So.2d 789, 799 (Ala. 2002) (internal citations and quotations omitted). See also American Resources Ins. Co. v. H&H Stephens Const., Inc., 939 So.2d 868, 873 (Ala. 2006) (discussing the reasonably prudent person standard – *i.e.*, that the terms of a policy should be given a rational and practical construction).

"Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy[.]" Auto–Owners Ins. Co. v. Toole, 947 F. Supp. 1557, 1561 (M.D. Ala. 1996) (citing Colonial Life & Accident Ins. Co. v. Collins, 194 So.2d 532, 535 (Ala. 1967) and U.S. Fidelity & Guarantee Co. v. Armstrong, 479 So.2d 1164, 1168 (Ala. 1985)). However, the "insurer bears the burden of proving the applicability of any policy exclusion." Id. The burden is also on the party seeking coverage to prove that coverage existed within the terms of the policy. Owners Ins. Co. v. Shep Jones Const., Inc., 2012 WL 1642169, *3 (N.D. Ala. May 3, 2012).

1. "Your Work" exclusion

Pennsylvania National contends that the "your work" exclusion in the policy precludes coverage for Kiker (and thus payment to St. Catherine for its state court verdict). That portion of the policy provides as follows:

> l. **Damage To Your Work**
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The clear policy language specifies that this exclusion does not apply if the work out of which the damage arises was performed by a subcontractor on the insured's behalf. The parties all agree that insured Kiker subcontracted St. Catherine's roofing work to Damon Lett. (Doc. 71-1 at 35-37). Thus, this policy exclusion does not apply to bar coverage.

    2. "Contractual Liability" exclusion

Pennsylvania National also contends that the contractual liability exclusion precludes coverage for Kiker (and thus payment to St. Catherine for its state court verdict) because that breach of contract verdict is an obligation for Kiker to pay by reason of its assumption of liability in the Kiker-St. Catherine roofing contract. That portion of the policy provides as follows:

> **b. Contractual Liability**
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> (1) That the insured would have in the absence of the contract or agreement;

St. Catherine contends that the contractual liability exclusion does not apply because the case law regarding "liability assumed by the insured under any contract" applies in the context of indemnification and hold-harmless agreements whereby an insured agrees to "assume" the tort liability of another, "not…the insured's breaches of its own contracts." (Doc. 103 at 7-8 (citing Ingalls Shipbuilding v. Fed. Ins. Co., 410 F.3d 214 (5th Cir. 2005)). St. Catherine adds that when the claim involves an implied breach of warranty (as here, insofar as the breach of contract claim includes the workmanship warranty), implied duties are not duties under the contract but instead, are duties implied by law. (Id. at 8-9 (citing United States Fidelity & Guar. Co. v. National Tank & Machine Works, Inc., 402 So.2d 925, 927-928 (Ala. 1981) (providing that

when a complaint alleges an *ex delicto* action arising out of a contract, the contractual exclusion does not apply)).

Alabama courts have not construed the contractual liability exclusion in the manner urged by St. Catherine. Rather,

> Alabama courts have recognized that contractual liability exclusions identical to the one here operate to deny liability for "property damage" and "bodily injury" resulting from breach of contract. *See Carter v. Cincinnati Ins. Co.,* 435 So.2d 42, 45 (Ala.1983) (holding that there is no insurance coverage pursuant to a commercial general liability policy with a contractual liability exclusion, when the plaintiff only sought to recover for breach of an implied contract, because the claim "falls squarely within the clear and unambiguous terms of the exclusionary provision [ ]"); *Am. Nat. Prop. & Cas. Co. v. Blocker,* 165 F.Supp.2d 1288, 1296–97 (S.D.Ala.2001) (discussing *Carter* and holding same); *Ajdarondinni v. State Auto Mut. Ins. Co.,* 628 So.2d 312, 313 (Ala.1993) (equivalent contractual liability exclusion in commercial general liability policy; jury in underlying suit returned verdict solely on the claims for breach of contract; court held that because the policy "clearly excludes breach of contract claims from its coverage, insurer has no duty to pay the judgment").

Shep Jones, 2012 WL 1642169 at *6.

Therefore under binding Alabama law the breach of contract claim and the implied warranty claim are excluded from coverage under the contractual liability exclusion. See also, Assurance Co. of Am. v. Admiral Ins. Co., 2011 WL 1897589, *8 (S.D. Ala. May 18, 2011) (providing that "[i]mplied warranties are terms that are implied by law in a contract and would not exist apart from that contract. …Actions for their breach therefore sound in contract as opposed to tort. The implied warranty at issue here would not exist were it not for the construction contract … therefore [this claim] is also excluded by operation of the contractual liability exclusion of the Scottsdale policy…") (citations omitted).

The court acknowledges that the discussion in Townsend Ford, Inc. v. Auto-Owners Ins. Co., 656 So.2d 360 (Ala. 1995) confuses the issue. In Townsend Ford the court stated that

15

contractual liability exclusions "traditionally serve[] to exclude 'indemnity' types of liability, whereby the liability itself was assumed," rather than warranty situations. Id. at 364. However, the ultimate conclusion was that the breach of the express warranty claim did not fall within the contractual exclusion and that if insurers wish to exclude such liability [express warranties] they can provide for a separate breach of warranty exclusion in the policy. Id. at 364-365. In any event, St. Catherine does not rely on the express warranty claim as the basis for its claimed coverage.[9] Therefore the holding in Townsend is inapplicable.[10]

**V.     Conclusion**

Accordingly, it is **ORDERED** that: 1) Pennsylvania National's Motion for Summary Judgment (Docs. 72, 89) against St. Catherine and Kiker is **MOOT in part** as to Kiker's counterclaims and **GRANTED in part** as to the declaratory judgment against St. Catherine and Kiker**;** and 2) St. Catherine's Motion for Summary Judgment against Pennsylvania National (Doc. 70) is **DENIED.** As such, the Court **DECLARES** that there is no indemnity afforded under the Pennsylvania National policy to Kiker for the breach of contract jury verdict entered against Kiker in the underlying state court case.

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the **24th** day of **April 2014.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

9 The express warranty remedy is limited to repairs to the roof and composition flashing and specifically excludes consequential damages to the building or contents.   (Doc. 71-4 at 4).

10 Moreover, Townsend would be distinguishable because the express warranty at issue in Townsend did not involve "the assumption of liability," but rather merely [was] a representation.   Id. at 364.   In the present case the express warranty is more than a representation, it promises a limited remedy in the case of faulty workmanship.